# Osborne v. Commonwealth.

October 18, 1949.

Hiram H. Owens for appellant.

A. E. Funk, Attorney General, and Robert J. Watson, Commonwealth's Attorney, for appellee.

JUDGE KNIGHT—Affirming.

This suit was brought pursuant to KRS Chapter 242 to enjoin the defendants J. B. Osborne and Earl Osborne from conducting their business as a nuisance and to padlock for a period of six months the building in which the business was operated in Pineville, Ky., which is in local option territory. The business conducted by defendants is a restaurant and is known as the "Coffee Pot." Its location in Pineville is described in the petition. It is alleged in the petition that it is operated in an illegal manner and the building is being used for illegal purposes; that said building is being used

for the storage and sale of illicit beer and intoxicating liquors; that drunks, boisterous and rowdy men and women congregate therein in riotous assemblies and gambling is conducted unlawfully therein. The defendants by answer denied the allegations of the petition. Upon trial of the case the court sustained the motion of the defendant Earl Osborne that the case be dismissed as to him and it adjudged that the business being operated by appellant J. B. Osborne, known as the Coffee Pot on Pine Street in Pineville, be padlocked for a period of six months from September 21, 1949. This appeal is from that judgment.

### The Proof

The Commonwealth's evidence was in substance that on August 2, 1949, an investigator for the Alcoholic Beverage Control Board assisted by a trooper from the State Police, under proper warrant, searched the property known as the Coffee Pot operated by appellant and found therein at that time 26 half pints of Seagram's Seven Crown Whiskey; that the whiskey was located in a back room on the first floor where some juke boxes and pinball machines were located; that the room in which the whiskey was found is connected with the remainder of the building with doors leading from one to the other; that the restaurant was located in front, the kitchen next behind that and the room in which the whiskey was found immediately behind that; that the place was being operated by appellant J. B. Osborne who was arrested and gave bond. Pearl Osborne, Chief of police of Pineville, testified that at several times he had occasion to go to the Coffee Pot Restaurant operated by appellant and had arrested several drunks there including women; that he had seen evidences of beer and whiskey being consumed on the premises and had taken bottles partly filled with whiskey off the booths; that he had carried out as high as thirteen empty pint bottles that had been scattered around under the booths, but he had not seen any beer around the place. Asked as to the reputation of the Coffee Pot Restaurant from what the people generally say about it he testified that its reputation for bootlegging and selling whiskey was bad and that it had had such reputation all the time he had been chief of police since January 5, 1948; that he had raided the place five or six times; that rough, bois-

terous people and drunken men and women congregated around the place, and that he had been there on numerous occasions to arrest drunken people; that he had made such arrests within the last three or four months.

The testimony for the defense given by the appellant J. B. Osborne was that he had operated the Coffee Pot Restaurant for approximately a year before this suit was filed; that during that time neither the chief of police nor anyone else had ever raided his place prior to August 2 when it was searched by the officers heretofore mentioned; that there had been no intoxicating liquors stored or sold on his premises since the raid of August 2, nor had there been any person arrested there as being drunk or charged with being drunk since August 2; that the room in which the juke boxes and pinball machines were located and in which the whiskey was alleged to have been found by the officers in the August 2 raid was leased to the Pineville Music Company and that he had nothing to do with the operation of that company. On cross-examination, he again stated that there had been no whiskey sold on his premises since August 2, but admitted that before that time he had sold some, approximately one-half case, and that he had only been selling it about twenty days before the search was made, and admitted that he was selling whiskey when the place was searched.

### The Applicable Law

KRS 242.310 provides that any person knowingly or intentionally renting or permitting the use of, or using, any premises, or part thereof, for the purpose of unlawfully selling or possessing intoxicating liquors in dry territory, shall be guilty of a nuisance and a violation of this chapter of the statutes.

KRS 242.340 provides that any Commonwealth's attorney may maintain an action in equity in the name of the state to enjoin any nuisance described in KRS 242.-310. This suit was brought by the Commonwealth's attorney under the authority of this section.

KRS 242.350(2) provides as follows: "It shall not be necessary for the court to find the property involved is being unlawfully used as described in KRS 242.310 at the time of the hearing, but on finding that the material

allegations of the petition are true, the court shall order that no alcoholic beverages shall be sold, bartered or stored on the premises or vehicle, or any part thereof. Upon judgment of the court ordering the nuisance abated, the court may order that the premises or vehicle shall not be occupied or used for six months.''

### Grounds for Reversal

The principal ground for reversal relied on by appellant is that the Commonwealth did not make out a case against appellant. We think the testimony, a resume of which is given above, does not bear out this contention but on the contrary was amply sufficient to establish the principal allegations of the petition and to show that appellant's place was used for the illegal possession and sale of intoxicating beverages. The search of August 2 at which time 26 half pints of liquor were found, his admission that he had sold some whiskey previous to that time and the testimony of the chief of police as to the conditions prevailing there and as to the general reputation of the place were sufficient to sustain the judgment. Even if one room of the building in which the whiskey was found on August 2 is leased out for the storage of pinball machines, as defendant alone testifies, other proof shows it is open and connected with other rooms in appellant's place and was no doubt accessible to him for storage of contraband whiskey even if it was not under his complete control.

It is also urged as a ground for reversal that there is no proof of any violation of the law after August 2 and since the suit was filed on September 10 there is no showing of a continuing and existing violation which would justify padlocking the place of business. In other words, it is contended that while it is not necessary to show that the property involved is being unlawfully used at the time of the hearing, it is appellant's contention that the violation must have continued and existed at the time the suit was filed, which in this case was September 10. We think this is a strained and untenable construction of the statute and would do violence to the apparent legislative intent. If violators could temporarily cease their operations between the time when the premises were searched and when the suit was filed, that is while the suit was being prepared, the pro-

visions in the statute for injunction and padlock proceedings could never be enforced. We think the plain intent of subsection (2) above quoted is that the action may be brought for violations occurring within a reasonable time prior thereto and that it is not necessary that it continue up to the time of the filing of the suit. It is only necessary that it be shown that the material allegations of the petition are true. We think that was established in this case.

Wherefore the judgment is affirmed.